IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| ADAM VALDEZ;<br>And FRANK SANDERS;<br>And SHAWN WALTERS;<br>And GENEA BASS;<br>And LAKIESHA DODSON;<br>And DANIEL HALL;<br>And SHERRY BRINTZENHOFE<br><br>Plaintiffs<br><br>v.<br><br><br>GM FINANCIAL;<br>And TRANS UNION LLC;<br>And ALLY FINANCIAL;<br>And CHASE AUTO FINANCE;<br>And JP MORGAN CHASE;<br>And RESORTS USA;<br>And WELLS FARGO HOME MORTGAGE<br><br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br><br><br><br>Civil Action No. _____<br><br><br><br>Complaint<br><br>and<br><br>Demand for Jury Trial |

## **COMPLAINT**

COMES NOW the Plaintiffs, SHERRY BRINTZENHOFE, FRANK SANDERS, SHAWN WALTERS, GENEA BASS,  LAKIESHA DODSON, and DANIEL HALL, ADAM VALDEZ(hereinafter the "Plaintiffs"), by and through Counsel, and through their complaint against the Defendants allege as follows:

## **PRELIMINARY STATEMENT**

1.   This is an action for actual, statutory and punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681 et seq. (Federal Fair Credit Reporting Act)

## JURISDICTION AND VENUE

2.   Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

3.   Venue in this District is appropriate under 28 U.S.C. §1391(b)(1) because defendants in this matter reside in the state of Texas as defined under 28 U.S.C. §1391 (c)(2).

## PARTIES

4.   Plaintiff Sherry Brintzenhofe is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.   Plaintiff Frank Sanders is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.   Plaintiff Shawn Walters is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7.   Plaintiff Genea Bass is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.   Plaintiff Lakiesha Dodson is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9.   Plaintiff Daniel Hall is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Plaintiff Adam Valdez is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

11. Defendant, TRANS UNION LLC, (hereinafter Trans Union) is a foreign For-Profit Corporation registered to do business in Texas, and may be served through its registered agent, Prentice Hall Corporation System, 211 East 7th Street, Suite 620, Austin, Texas 78701. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d) to third parties.

12. Defendant, GM Financial (hereinafter GM Financial) is a for profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

13. Defendant, Ally Financial (hereinafter Ally Financial) is a for profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

14. Defendant, Chase Auto Finance (hereinafter Chase Auto Finance) is a for profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

15. Defendant, JP Morgan Chase Auto Finance (hereinafter JP Morgan Chase) is a for profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

16. Defendant, Resorts USA (hereinafter Resorts USA) is a for profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

17. Defendant, Wells Fargo Home Mortgage (hereinafter Wells Fargo Home Mortgage) is a for profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

## FACTUAL ALLEGATIONS

18. All Plaintiffs below incorporate by reference all the foregoing paragraphs as though the same were set forth at length herein.

### As to Sherry Brintzenhofe v. TransUnion/Ally Financial

19. Sherry Brintezhofe paid off her account in full on or about 6/3/2016.

20. TransUnion's credit report dated February 25, 2017, reported the account with a "Pay Status: Account 60 Days Past Due Date."

21. However, even though Brintezhofe paid off her account in full, Plaintiff's TransUnion credit report dated February 25, 2017, reports the "Pay Status 30 days past due". After Plaintiff paid the account in full, the account is reporting by TransUnion with a $0 balance, but still reporting that monthly payments are due, "Terms: $467 per month for 72 months" and the "Pay Status 60 days past due." as of February 25, 2017, when the TransUnion credit report was created. It is impossible to have an account that is paid off in June 2016, bringing the account current at that time, with a "0" balance, and still have a scheduled payment amount of $467 and currently 60 days past due as of February 25, 2017. Not only is the Ally Financial account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

22. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated September 25, 2017. As a result of Plaintiff's dispute, Ally Financial verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information. TransUnion

continued to report the inaccurate credit information at the instruction of Ally Financial.  TransUnion's latest credit report dated January 4, 2018 is currently reporting the same inaccurate information that was reported in her February 25, 2017.

### As to Frank Sanders v. TransUnion/JP Morgan Chase

23. Frank Sanders paid off his account in full on or about 7/25/2011.

24.  As of January 1, 2018, TransUnion is reporting the account with a "Pay Status: Account 120 Days Past Due Date."

25. However, even though Sanders paid off his account in full, Plaintiff's Trans Union credit report is reporting the "Pay Status 30 days past due".  After Plaintiff paid the account in full, the account is reporting by Trans Union with a $0 balance, but still reporting the "Pay Status 120 days past due." as of January 10, 2017, when the Trans Union credit report was created.  It is impossible to have an account that is paid off in August 12, 2011, bringing the account current at that time, with a "0" balance, and still be currently 120 days past due as of January 10, 2018.  Not only is the Chase account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

26. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to Trans Union, dated January 10, 2017.  As a result of Plaintiff's dispute, Chase verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Chase.  TransUnion's latest credit report dated January 10, 2018.

### As to Shawn Walters v. TransUnion/Chase Auto Finance

6

27. Shawn Walters paid off her account in full on or about 10/24/2014.

28.  TransUnion's credit report dated December 2, 2016, reported the account with a "Pay Status: Account 120 Days Past Due Date."

29. However, even though Walters paid off his account in full, Plaintiff's TransUnion credit report dated December 2, 2016, reports the "Pay Status 120 days past due".  After Plaintiff paid the account in full, the account is reporting by TransUnion with a $0 balance, but still reporting the "Pay Status 120 days past due." as of December 2, 2016, when the TransUnion credit report was created.  It is impossible to have an account that is paid off in October 24, 2014, bringing the account current at that time, with a "0" balance, and still be currently 120 days past due as of December 2, 2016.  Not only is the Chase account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

30. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated December 20, 2016.  As a result of Plaintiff's dispute, Chase verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Chase.  TransUnion's latest credit report dated January 5, 2017 is currently reporting the same inaccurate information that was reported on his December 2, 2017.

### As to Genea Bass v. TransUnion/GM Financial

31. Genea Bass paid off her account in full on or about 4/17/2015.

32.  TransUnion's credit report dated January 23, 2017, reported the account with a "Pay Status: Account 60 Days Past Due Date."

33. However, even though Bass paid off her account in full, Plaintiff's TransUnion credit report dated January 23, 2017, reports the "Pay Status 60 days past due".  After Plaintiff paid the account in full, the account is reporting by TransUnion with a $0 balance, but still reporting the "Pay Status 60 days past due." as of January 23, 2016, when the TransUnion credit report was created.  It is impossible to have an account that is paid off in April 17, 2015, bringing the account current at that time, with a "0" balance, and still be currently 60 days past due as of January 23, 2017.  Not only is the account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

34. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated January 31, 2017.  As a result of Plaintiff's dispute, GM Financial verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of GM Financial. TransUnion's latest credit report dated July 7, 2017 is currently reporting the same inaccurate information that was reported on his January 23, 2017.

**As to Lakiesha Dodson v. TransUnion/Resorts USA**

35. Lakiesha Dodson off her account in full on or about 2/27/2014.

36.  TransUnion's credit report dated December 9, 2016, reported the account with a "Pay Status: Account 120 Days Past Due Date."

37. However, even though Dodson paid off her account in full, Plaintiff's TransUnion credit report dated December 9, 2016, reports the "Pay Status 120 days past due".  After Plaintiff paid the account in full, the account is reporting by

TransUnion with a $0 balance, but still reporting the "Pay Status 120 days past due." as of December 9, 2016, when the TransUnion credit report was created.  It is impossible to have an account that is paid off in February 27, 2014, bringing the account current at that time, with a "0" balance, and still be currently 120 days past due as of December 9, 2016.  Not only is the account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

38. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated December 20, 2016.  As a result of Plaintiff's dispute, Resorts USA verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Resorts USA. TransUnion's latest credit report dated June 11, 2017 is currently reporting the same inaccurate information that was reported on his December 9, 2016.

### As to Daniel Hall v. TransUnion/Wells Fargo Home Mortgage

39. Daniel Hall off her account in full on or about 8/10/2012.

40.  TransUnion's credit report dated December 22, 2016, reported the account with a "Pay Status: Account 120 Days Past Due Date."

41. However, even though Dodson paid off her account in full, Plaintiff's TransUnion credit report dated December 22, 2016, reports the "Pay Status 120 days past due".  After Plaintiff paid the account in full, the account is reporting by TransUnion with a $0 balance, but still reporting the "Pay Status 120 days past due." as of December 22, 2016, when the TransUnion credit report was created.  It is impossible to have an account that is paid off in August 10, 2012, bringing the account current at

that time, with a "0" balance, and still be currently 120 days past due as of December 22, 2016.  Not only is the account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

42. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated December 22, 2016.  As a result of Plaintiff's dispute, Wells Fargo verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Wells Fargo.  TransUnion's latest credit report dated July 7, 2017 is currently reporting the same inaccurate information that was reported on his December 22, 2016.

### As to Adam Valdez v. TransUnion/GM Financial

43. Plaintiff Adam Valdez's GM Financial Account was 30 days past due on September 2016. Plaintiff paid off his GM Financial account in full on October 1, 2016, however, as of April 17, 2017, Trans Union is reporting/publishing the account as being 30 days late.

44. The account was 30 days past due on September 2016, however, when the account was paid off in full on October 1, 2016, it locked the account status in as being 30 days late in perpetuity.

45. Plaintiff paid off the GM Financial account in full in October 2016, bringing the account current as of that date.

46. Adam Valdez's TransUnion credit report dated April 17, 2017, reports the "Payment Status 30 days past due". After Plaintiff paid the account in full, the account is reporting by TransUnion with a $0 balance, and still has a "Monthly Payment $587" and the "Payment Status 30 days past due." as of April 17, 2017, when the TransUnion

credit report was created. It is impossible to have an account that is paid off in October 2016, bringing the account current at that time, with a "0" balance, and still have a scheduled payment amount of $587 and currently 30 days past due as of April 17, 2017. Not only is the GM Financial account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

47.  As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated May 2, 2017. As a result of Plaintiff's dispute, GM Financial verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information. TransUnion continued to report the inaccurate credit information at the instruction of GM Financial. TransUnion's dispute results dated, June 6, 2017, reported "Pay Status: Account 30 Days Past Due Date".

**Parroting bad data**

48. When an account is disputed with TransUnion, they send an ACDV to the data furnisher with the information they have "on profile".  The data furnisher will then return the ACDV to the credit reporting agencies with their edits/changes/modifications to the credit information, or the data furnisher can delete or remove the account from the consumer's credit report as well.   Plaintiffs disputed their accounts with detailed and thorough dispute letters, informing Trans Union, as well as with each data furnisher, that the accounts are reporting with a current status of being past due, even though the accounts were paid off.   Trans Union is doing nothing more than parroting information that the data furnishers are providing them, without any care of its accuracy.  Parroting information is a willful/reckless violation of the

FCRA.  Please see <u>Dixon-Rollins v. Experian Info. Sols., Inc.</u>, 753 F. Supp. 2d 452,
463 (E.D. Pa. 2010)(It was not unreasonable for the jury to conclude that Trans Union
wilfully or recklessly violated the FCRA by doing nothing more than "parroting
information" it received from ACCB. *Cushman*, 115 F.3d at 225 ("[A]
'reinvestigation' that merely shifts the burden back to the consumer and the credit
grantor cannot fulfill the obligations contemplated by the statute."); *Campbell v. Chase
Manhattan Bank, USA, N.A.*, No. 02–3489, 2005 WL 1514221, at *16 (D.N.J. June 27,
2005) (parroting information received from original source may be considered a willful
violation of the FCRA). Thus, there is no basis to disturb the jury's finding that Trans
Union.).

### Trans Union is responsible for the accuracy of the information they obtain from the data furnishers

49. Trans Union is responsible for the accuracy of the information they obtain
from the data furnishers.  Please also see <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 293
(5th Cir. 1993)(In a reinvestigation of the accuracy of credit reports, a credit bureau
must bear some responsibility for evaluating the accuracy of information obtained from
subscribers. *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F.Supp.
972, 976 (M.D.Fla.1985).)

50. Trans Union did not follow reasonable procedures to assure maximum
possible accuracy and has been reporting false and inaccurate information even after it
has known or should have known the information was incorrect.

51. GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells
Fargo Home Mortgage and Ally Financial did not provide a good faith investigation
into the disputed accounts.

52. Trans Union did not provide a good faith investigation into the disputed GM
Financial, Ally Financial and Chase Mortgage accounts.

53. The GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial accounts are not only inaccurate but is also misleading, which the Fifth Circuit has addressed. The Fifth Circuit has ruled that a credit report is inaccurate on its face if so misleading that it leads to adverse credit decisions, *please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1988)(a consumer report is inaccurate if it is "misleading in such a way and to such an extent that it may be expected to adversely effect credit decisions").

54. Trans Union have a statutory duty to have reasonable procedures to assure maximum accuracy. Their procedures regarding this reporting are not assuring accuracy, much less maximum accuracy.

55. The reporting of this credit information on Plaintiff's credit report negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness. This information was furnished by GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial and reported by Trans Union, misrepresenting the payment rating and/or status of Plaintiff's account, and is currently being reported and is reflected on Plaintiffs' credit report, resulting in lowering Plaintiff's credit score and furthering Plaintiff's damages.

56. Plaintiff's credit reports, credit information and file formulated by Trans Union have been viewed by current and potential credit grantors and extenders of credit, as indicated by inquiries on each of their credit reports.  The inaccurate information furnished by GM Financial, JP Morgan Chase, Chase Auto Finance,

Resorts USA, Wells Fargo Home Mortgage and Ally Financial and reported by Trans Union is continuing to damage the Plaintiffs' credit rating.

57. As a result of Defendants Trans Union, GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial conduct, Plaintiffs have suffered great physical, emotional and mental pain and anguish, all to Plaintiffs' great detriment and loss.

58. As a result of Defendants Trans Union, GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial conduct, Plaintiffs has suffered actual damages all to Plaintiff's great detriment and loss.

59. At all times pertinent hereto, Defendants Trans Union, GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial, were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

60. At all times pertinent hereto, the conduct of the Defendants Trans Union, GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CAUSES OF ACTION

61. Plaintiffs incorporates by reference the foregoing paragraphs and footnotes as though the same were set forth at length herein.

62. This suit is based upon the Defendants violation of the Fair Credit Reporting Act. All causes of action were the producing causes of damages which Plaintiff suffered.

### COUNT I—VIOLATION OF THE FAIR REPORTING ACT

63. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

64. This suit is brought against all Defendants as the damages made the basis of this suit were caused by their violation of the FCRA. In all instances of violating the FCRA, Defendants did so willfully and/or negligently. Under, 15 U.S.C. §1681n and §1681o, the Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys fees.

15 U.S.C. §1681n, "Civil Liability for willful noncompliance" reads:

(a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

    (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000

    (2) such amount of punitive damages as the court may allow; and

    (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.

And, 15 U.S.C. §1681o, "Civil Liability for negligent noncompliance" reads:

(a ) Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of:

(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action with reasonable attorney's fees as determined by the court.

65. TransUnion violated their duty under 15 U.S.C. §1681i(a)(1)(A) to conduct a good faith investigation into Plaintiffs' notice of dispute. Plaintiffs requested TransUnion to reinvestigate the inaccurate reporting of their accounts via detailed and thorough dispute letters.

66. The disputes were detailed, thorough and informed TransUnion of all of the relevant information regarding the inaccuracies of the accounts as well as attaching documents, proving the account was being reported inaccurately.

67. TransUnion did not conduct a good faith and reasonable investigation into Plaintiffs' disputes.

68. These accounts were paid off  and TransUnion is currently reporting Plaintiffs' accounts with a "$0" balance but currently past due. It is impossible for Plaintiffs to make "$0" payments to bring the account current. With this type of reporting, Plaintiffs will never be able to bring the accounts current.

69. TransUnion was notified and made aware of the specific issues from the dispute letters. It should have been easy for TransUnion to determine that the account was extremely inaccurate with the information and documentation it was provided.

70. The fact that TransUnion is currently reporting inaccurate information on Plaintiffs' credit profile/credit report, which is viewable, and has been viewed by third parties, is proof that Trans Union did not conduct a reasonable investigation.  If Trans

Union  would have properly investigated the issue they should have determined that the accounts were paid off, with a "$0" balance but still reports as if Plaintiffs are currently late and past due and correct or delete the account.

71. The section entitled "Procedure in case of disputed accuracy" under 15 U.S.C. §1681i(a)(1)(a) reads:

(a)  Reinvestigations in case disputed information

(1) Reinvestigation required

(A) In general-- Subject to subjection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

And:

15 U.S.C. §1681i(a)(5) reads:

(5) Treatment of Inaccurate or Unverifiable Information

(A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

72. Defendants GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial, violated their duty under 15 U.S.C. §1681s-2(b) to conduct a reasonable and good faith investigation into Plaintiffs' notice of disputes and failing to delete or correct the inaccurate information. After receiving a dispute notice from Trans Union, Defendants GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial  did not conduct a complete, accurate or reasonable investigation into the disputed issue. GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial verified the inaccurate information that was disputed from a detailed and thorough dispute letters. GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial should have discovered that the information they are providing the Credit Reporting Agencies was not accurate. GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial knew of their current faulty reporting because Plaintiffs paid them in full, with $0 balances. Had Defendants GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial  properly investigated Plaintiffs' disputes, they would have corrected the reporting to a current status.  It is impossible for Plaintiff to make "$0" payments to bring the account current.  GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial  were made fully aware of the inaccurate reporting and failed to correct or delete the account.

73. The section entitled "Duty of Furnishers of Information Upon Notice of

Dispute" under 15 U.S.C. §1681s-2(b) reads:

(1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

(A) conduct an investigation with respect to the disputed information:

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate based on the results of the reinvestigation promptly

(i)    modify that item of information
(ii)   delete that item of information
(iii)  permanently block the reporting of that item of information

74. TransUnion is currently violating 15 U.S.C. §1681e(b), by not following reasonable procedures to assure maximum possible accuracy.

75. Plaintiff paid off their accounts in full, however, the accounts continue to report with a late/past due status.

76. If TransUnion had reasonable procedures, they would not allow an account to report as though the account is currently past due, with a "$0" balance, after the account was paid off and brought current. Trans Union should be reporting the accounts as "current" and not "past due".  These accounts are reporting as though the Plaintiffs are currently past due, each and every month. With this type of reporting,

Plaintiffs will never be able to make this account current.  TransUnion lack the

procedures to avoid such faulty reporting. TransUnion know that these accounts were

paid, however, they continue to report a current status as past due.

(b ) Accuracy of the Report

Whenever a consumer reporting agency prepares a consumer report it shall follow
reasonable procedures as assure maximum possible Accuracy of the information
concerning the individual about whom the report relates

### ACDV/CDV process ruled to be inadequate

77. Trans Union investigation processes also lacks reasonable procedures.

TransUnion's investigation process into these disputes were nothing more than sending

an ACDV/CDV to the data furnishers to "verify" account information and continued to

report bad credit information that they responded with. The Fifth Circuit, District

Courts in Texas as well as federal courts across the country has ruled that relying on

the ACDV is not an investigation.  Please **see <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288,**

**293 (5th Cir. 1993)** (**TRW relied solely on the CDVs despite the number of**

**disputed accounts and the allegations of fraud. TRW also relied on the**

**subscribers to tell TRW whether to delete information from Stevenson's report.**

**In a reinvestigation of the accuracy of credit reports, a credit bureau must bear**

**some responsibility for evaluating the accuracy of information obtained from**

**subscribers.** *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608

F.Supp. 972, 976 (M.D.Fla.1985).); please also see <u>Pace v. Experian Info. Sols. Inc.</u>,

CIV.A. 2:03-CV-45, 2004 WL 1057795, at *2 (E.D. Tex. Apr. 28, 2004)(**When a**

**credit reporting agency receives notice of inaccurate information from a**

consumer, § 1681i(a) imposes a duty on the agency to reinvestigate the accuracy of the information. In this circuit, the law is clear that **"in a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."** *Stevenson v. TRW, Inc.,* **987 F.2d 288 (5**[th]** Cir.1998)(affirming finding of negligence where credit reporting agency relied exclusively on consumer dispute verification forms (CDVs) when discharging its reinvestigation duties**); please also see Zala v. Trans Union, LLC, CIV. A. 3:99-CV-0399, 2001 WL 210693, at *5 (**N.D. Tex. Jan. 17, 2001)(In** *Stevenson v. TRW Inc.,* **987 F.2d 288, 293 (5th Cir.1993), the Fifth Circuit held that a consumer reporting agency that relied solely on subscribers' written consumer dispute verification forms rather than contacting the subscribers directly was negligent.** The court noted that even though the credit agency was unable to verify some disputed accounts, it failed to remove those disputed accounts from the credit report. *Id.* **Rejecting as insufficient the credit agency's practice of relying on the consumer to resolve the problem with the creditor, the court stated that "[i]n a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."** *Id.* ). Courts across the country have also ruled that relying only on ACDVs does not constitute an investigation in to consumer's disputes. please also see White v. Trans Union, LLC, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006)(TransUnion **seeks to deflect responsibility for this inaccuracy to the creditors** upon whom it relies for information and falls back on its assertion that **"a creditor is in a better position than a consumer reporting agency with regard to the ability to detect and**

**correct errors in the reporting of a consumer's account**." Def.'s Mot. to Dismiss Pls.' Second Am. Consolidated Class Comp. 13:12-14. **This hardly suffices to establish, as a matter of law, that a "reasonable reinvestigation" amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source**. *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir.1994); *Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir.1993); *McKeown v. Sears Roebuck & Co.,* 335 F.Supp.2d 917, 930 (W.D.Wis.2004); please also see Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010)(**the Third Circuit instructed Trans Union that it may not just repeat information it receives from the original source, but must do more to verify the credit information.** *Cushman,* 115 F.3d at 225. Since *Cushman* was decided, Trans Union has been repeatedly warned of its statutorily required obligation in conducting a reinvestigation, *see e.g., Krajewski,* 557 F.Supp.2d at 616; *Crane,* 282 F.Supp.2d at 320; *Lawrence,* 296 F.Supp.2d at 589; *Saenz v. Trans Union, LLC,* 621 F.Supp.2d 1074, 1083 (D.Or.2007) (**Trans Union must do more than parrot information received by original source**); *Lambert v. Beneficial Mortgage Corp.,* No 05–5468, 2007 WL 1309542, at *2 (W.D.Wash. May 7, 2007) (in certain circumstances a consumer reporting agency may need to verify the accuracy of its initial source of information) (citations omitted), and found liable for noncompliance.

*See, e.g., Mullins v. Equifax Info. Servs., LLC,* No. 05–888, 2007 WL 2471080, at *7 n.

11 (E.D.Va. Aug. 27, 2007).[7] Thus, because Trans Union has been **warned of its**

**inadequate reinvestigation practices in prior cases, it may be considered a repeat**

**FCRA offender**. *See Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.,* 399 F.3d 224, 232

(3d Cir.2005) (recidivist behavior relates to defendant's conduct as to non-parties).

**Trans Union's refusal to modify its reinvestigation procedures and insistence on**

**mimicking the original sources' responses supports the conclusion that punitive**

**damages are necessary to deter future violations**. "[E]vidence that a defendant has

repeatedly engaged in prohibited conduct while knowing or suspecting that it was

unlawful would provide relevant support for an argument that **strong medicine is**

**required to cure the defendant's disrespect for the law**." *BMW of N. Am., Inc. v.*

*Gore,* 517 U.S. 559, 576–77, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Thus, **because**

**Trans Union has continued to disregard its obligations despite clear judicial**

**rulings and warnings, its conduct is more reprehensible than that of a first time**

**offender, requiring more severe punishment**. *Id.* at 577, 116 S.Ct. 1589.); please see

Grigoryan v. Experian Info. Sols., Inc., 84 F. Supp. 3d 1044, 1074–75 (C.D. Cal.

2014)(It is well settled that exclusive reliance on ACDV procedures does not suffice,

as a matter of law, to establish that a "reasonable investigation" took place once a

consumer disputes the accuracy of the furnisher's information. See *Bradshaw v. BAC*

*Home Loans Servicing, LP,* 816 F.Supp.2d 1066, 1073–74 (D.Or.2011) ("Many courts,

including this one, have concluded that where a CRA is affirmatively on notice that

information received from a creditor may be suspect, it is unreasonable as a matter of

law for the agency to simply verify the creditor's information through the ACDV

process without additional investigation"); *White v. Trans *1075 Union, LLC,* 462
F.Supp.2d 1079, 1083 (C.D.Cal.2006) ("TransUnion seeks to deflect responsibility for
this inaccuracy to the creditors upon whom it relies for information and falls back on
its assertion that 'a creditor is in a better position than a consumer reporting agency
with regard to the ability to detect and correct errors in the reporting of a consumer's
account.' ... This hardly suffices to establish, as a matter of law, that a 'reasonable
reinvestigation' amounts to an inquiry that goes only to confirmation of the accuracy of
information from its original source"); see also *Cushman v. Trans Union Corp.,* 115
F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must
consist of something more than merely parroting information received from other
sources"); *Apodaca v. Discover Fin. Servs.,* 417 F.Supp.2d 1220, 1230–31
(D.N.M.2006) (noting that credit reporting agencies may not rely on automated
procedures that make only superficial inquiries once the consumer has notified it that
information is disputed).

78.   The ACDV/CDV is nothing more than a verification, not an investigation. In
addition to TransUnion's lack of reporting procedures that would allow such an
erroneous reporting, Trans Union's investigation process lacks the proper procedures as
well.

79. The conduct Trans Union and GM Financial, JP Morgan Chase, Chase Auto
Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial were a direct
and proximate cause, as well as a substantial factor in bringing about the serious
injuries, damages and harm to Plaintiffs that are outlined above and, as a result,

Defendants are liable to compensate Plaintiffs for the full amount of actual, statutory, compensatory and punitive damages, as well as such other relief, permitted by law.

## DEMAND FOR JURY TRIAL

80. Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs seeks judgment in Plaintiff's favor and damages against the Defendants Trans Union and GM Financial, JP Morgan Chase, Chase Auto Finance, Resorts USA, Wells Fargo Home Mortgage and Ally Financial based on the following requested relief:

a.  Actual damages pursuant to 15 U.S.C. §1681;

b.  Statutory damages pursuant to 15 U.S.C. §1681;

c.  Punitive damages pursuant to 15 U.S.C. §1681;

d.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n, §1681o; and

e.  Such other and further relief as may be necessary, just and proper.

Dated: November 12, 2018

Respectfully submitted,

/s/ Dennis McCarty
Dennis McCarty
ATTORNEY FOR PLAINTIFFS
Mississippi Bar No. 102733
Federal Bar No. 993800
McCarty & Raburn, A Consumer Law Firm, PLLC
3000 Custer Rd. Suite 270 #1501
Plano, Texas 75075
Telephone: 817-704-3375

Fax (817) 887-5069
Dennismccartylaw@gmail.com

/s/Jonathan Raburn
Jonathan Raburn
ATTORNEY FOR PLAINTIFFS
Louisiana Bar Roll No. 28728
McCarty & Raburn, A Consumer Law Firm, PLLC
3000 Custer Rd. Suite 270 #1501
Plano, Texas 75075
jonathan@geauxlaw.com
318-412-2777